JOHN J. MILLER, plaintiff in error, *vs.* MITCHEL, REID & Co., defendants in error.

1. When a party did not enter an appeal within the time prescribed by law, and has otherwise been guilty of negligence, a new trial will not be granted on account of newly discovered evidence ; more especially when the evidence is cumulative, and one of the witnesses, of whom the discovery is alleged to have been made, gave evidence on the trial, and the other was a clerk of the party moving for the new trial, at the the time of the transaction, and the motion is not made more than twelve months after the rendition of judgment.

2. Under the 6th section of the 11th article of the Constitution, motions for new trials, bills of review, or other proceeding, to vacate judgments, orders or decrees, made since the 19th of January, 1861, must be for *fraud*, illegality, or error of law. That section does not relieve one who was cast in his suit, or lost his rights by his own negligence.

New trial for newly discovered evidence, etc.   By Judge
POPE.   Fulton Superior Court.   October Term, 1868.

Miller brought "case" against A. W. Mitchell, John M.
C. Reid and F. M. Richardson, as warehousemen, under the
firm-name of Mitchell, Reid & Co.   He averred that on the
10th of August, 1865, as such warehousemen, they received
sixteen packages, containing many valuable chattels, (a bill
of particulars of which was given, in which the aggregate
value of the goods was put at $1,757 00,) worth $4,000 00,
to be taken care of and re-delivered to .him, and that by
their carelessness the goods were lost.

The defendants said that they had delivered the goods.
The cause was tried, before a petit jury, in October, 1867,
and resulted in a verdict for $1,768 00 and costs for the
plaintiff, and judgment was entered for the same.   An
adjourned term of the Court was held.   On the 5th day
after the final adjournment, Richardson applied to the Clerk
to enter an appeal, but the Clerk would not allow it entered
at that time.   *Fi. fa.* issued, but had not been collected at
October Term, 1868.

At that term, said defendants moved for a new trial, upon
the grounds that:   1st and 2d. The verdict was contrary to
law and evidence.   3d. Because the jury acted corruptly.
4th. Because of Richardson's mistake as to appealing.   6th.
Because of certain newly discovered evidence; and 6th,
and lastly, because the defendants, and their attorneys, were
taken by surprise on said trial by said plaintiff testifying in
person and denying the agency of Tomlinson.

With this motion was an agreed brief of the evidence, which
was substantially as follows:   Plaintiff and family refugeed
from Tennessee to Baldwin county, Georgia, and in August,
1865, was removing to Cowan, Tennessee.   His family went
forward to Cowan, and he shipped said packages for that
point, marked to his son, R. H. Miller, who was to receive
them.   The railroad receipt taken by him called said goods
"one lot of old furniture, that is to say, eleven boxes, one
barrel, one bale, one bale slats, one rocker, two chests, one

chest, one trunk." These goods came to Atlanta by railroad, and for want of store-room, and because they could not then be sent forward, they were, by the M. & W. R. R. agent, sent to defendants for storage. They kept the goods till about the 15th of August. Mr. Tomlinson, of Tennessee, whom Richardson knew, came to Georgia, and plaintiff's wife asked him to look up the goods, giving him a written *memorandum* of the packages, etc. He inquired for the goods at Macon, learned that they had come to Atlanta, and traced them to the possession of the defendants. He showed defendants his *memorandum*, which corresponded with the goods in their possession, told them that plaintiff was very anxious to receive the goods, that plaintiff was responsible and punctual, and would send the amount of money needed when advised what it was. They said the railroad agents would not ship goods till freight was paid. He suggested telegraphing R. H. Miller, and wrote a dispatch to be sent, putting the amount at $97 00, to pay the freight and defendants' charges on the goods; the dispatch was sent off by defendant, but no answer was received; he also wrote on defendants' book a direction to send the goods to the care of T. Crutchfield, Chattanooga, Tennessee. The defendants said they would send the goods next morning; that they would advance the freights and wait for Miller to pay them. Tomlinson swore that in this he was not acting by employment or agency, but in a neighborly way, in order to have the goods forwarded. The defendants, next day, sent the goods to the W. & A. R. R. in drays, giving Henry Mitchell, son of one of the defendants, and their clerk, the money to pay the freight. When Tomlinson went to the train, to go home, at about noon next day, he saw but two or three of the boxes, and was told by the shipping clerk that the goods had not been put upon the train because they did not arrive in time. R. H. Miller and his mother having been informed by letter from the defendants of said shipment of the goods, went to Chattanooga, but did not find them there. Meanwhile, plaintiff had gone home. He sent a Mr. Hines to search for the goods. He called on the defendants for the

goods, and was told by them of their shipment of the goods, as aforesaid, and that the persons then in charge of the W. & A. R. R. did not then give receipts for goods. While they were talking, Mr. Burr, one of their clerks, came in, and said that the goods had remained on the platform of the W. & A. R. R. until the evening before, and had then been moved to Oliver & Woddail's ware-house. Thereupon Hines went to Oliver & Woddail's, found most of the boxes, with no chest or trunk, except a chest broken to pieces. All the boxes, except one or two, appeared to Hines to have been broken open and searched and nailed up again. They were sent to Oliver & Woddail's about the last of September, 1865, after the W. & A. R. R. was turned over to the civil authorities, and because the agent knew not what else to do with them, there being no railroad depot at that time in Atlanta.

Hines, before he left Atlanta with the goods, paid Oliver & Woddail's storage, and defendants' claim for storage, and for the freight which they said they had paid out, through Henry Mitchell, making a total of $108 00, because they demanded the same of him before moving the goods. (It was not shewn that Henry Mitchell did pay the freight.) The goods arrived safely at Cowan, except what were missing before Hines came after them. The fact that they were missing, what they were, and their value, was shewn by the testimony of plaintiff's daughters and a Miss Hines, they swearing that the bill of particulars was correct. There was no evidence as to the value of the goods offered by defendants. All these facts were shewn by interrogatories.

The plaintiff was sworn on the trial, and testified, that Tomlinson was not his agent, that he was his neighbor, and was merely asked to make inquiry for the goods as he was coming south.

Said Woddail also testified as to how he got the goods, that the boxes were in very bad order, seemed to have been rifled or plundered, and for some time exposed to the weather; that Burr came with Hines for the goods, and they put the packages in shipping order, packing up all they had received.

RICHARDSON also testified in person on the trial, but not materially changing what is aforesaid.

Movants also produced certain affidavits of the following purport, to-wit: several affidavits made by jurymen who tried said cause, as to the misconduct of their fellow-jurymen; an affidavit of said Burr, in which he stated, that at Oliver & Woddail's there was but one old chest and one common sized trunk that had been broken open; a part of the contents of the chest were missing, (at least it was only partly filled;) the trunk had nothing in it; there was one slat off of one large box, but apparently nothing had been taken from it; it had bed clothing on top, and apparently had not been interfered with; that he assisted the young man (Hines) in re-packing and fixing up the packages for shipment, and they were shipped off by the young man; and that, judging from the size of the chest and trunk which had been broken into, they could not have held half the quantity of goods mentioned in said bill of particulars; that if the goods not taken were as valuable, proportionably, as those lost, judging from the number and size of the packages, they would have been worth from $15,000 00 to $20,000 00. An affidavit by said Waddail, that said boxes were overhauled and re-packed while in his store, that the goods were mostly quilts, counterpanes, etc., and, among the rest, a bolt of brown domestic, and that he did not believe the whole of them worth $300 00. They, the defendants and their attorneys, made affidavit that they knew nothing of the facts stated in Burr's and Woddail's affidavits till a few days before this motion for new trial was made; affidavits by defendant's attorney, that Richardson alone attended to said case for the defendants, and was instructed to enter an appeal, and that he must do so within four days from the final adjournment of the Court; by Richardson, that acting for his firm, by special understanding, he was to appeal; he, from a mistake as to the time in which an appeal ought to have been entered, applied one day too late, and the Clerk refused to receive the appeal; and finally, an affidavit of the defendants' attorney, in the Court below, that the defence had been based solely upon the ground

Miller *vs.* Mitchel, Reid & Co.

of delivery to plaintiff's agent, and that when plaintiff, in person, denied the agency of Tomlinson, it took him by surprise.

At the hearing, plaintiff's attorney objected to the grant of a new trial upon the ground that said defendants had a bill for a new trial in this case then pending. He was told by the defendants' attorneys that said bill was dismissed. He then objected that this motion came too late, and contained no sufficient ground for a new trial under the facts.

After argument had, the Court ordered that there should be a new trial, and this order is assigned as error. In the Supreme Court, the question as to the misconduct of the jury was not insisted upon.

HILLYER & BRO., for plaintiff in error, cited the following authorities: On the subject of failure to appeal, and analogous cases where parties lost their remedy by failing to move within the time limited by statute. *Gordon vs. Robertson,* 26. *Ga.,* 411; *Dean vs. The State,* 9 *Ga.,* 406; *Wooten & Co. vs. Nall,* 18 *G.,* 608, 30 *Ga.,* 43; *Neal et al. vs. Crew,* 12 *Ga.,* 93; *Taylor vs. Holland,* 20 *Ga.,* 12; *Leak vs. McDowell,* 6 *Ga.,* 264; *Duke vs. Griffin,* 6 *Ga.,* 319; *Arnold vs. Wills and wife,* 6 *Ga.,* 381; *Russell vs. Marsh and Brians,* 6 *Ga.,* 491; *Turner vs. Collins,* 8 *Ga.,* 253; *Hightowwr vs. Hightower,* 13 *Ga.,* 204; Code, 3057, 3537, 3121, 3660, *et seq.* On the question of how far discretion of the Court below will be controlled in a case like this: *Georgia Railroad vs. Scott,* 37 *Ga.,* 101; *Camp vs. Howell,* 37 *Ga.,* 312; The People vs. Superior Court of New York, 5 Wendell, 127. On the subject of newly discovered testimony, as to want of diligence, immateriality, etc. *Bevy vs. The State,* 10 *Ga.,* 527; *Roberts vs. The State,* 3 *Kelly,* 323; *Monroe vs. The State,* 5 *Ga.,* 139; *Beard vs. Summers,* 9 *Ga.,* 4; *Giles vs. The State,* 6 *Ga.,* 276; *Carlile vs. Tidwell,* 16 *Ga.,* 35; *Wright vs. Greenwood,* 17 *Ga.,* 418; *Wright vs. Central Railroad,* 21 *Ga.,* 346; *Mitchell vs. Printup,* 25 *Ga.,* 182; *Dickinson vs. Solomons,* 26 *G.,* 689; *Avery vs. The State,* 26 *Ga.,* 233; *Roach vs. The State,* 34 *Ga.,* 83; *Wright vs. The State,*

34 *Ga.*, 114; *Jones vs. McCrea*, 37 *Ga.*, 48 ; *O'Barr vs. Alexander et al.*, 37 *Ga.*, 204; *Dupree vs. Price*, 37 *Ga.*, 239 ; Graham on New Trials, 463, *et seq.*, 10 Wendell, 293; 4, Hunph, 251, 5 Serg. & Rawle, 41 ; 2 Binn, 582 ; 8 Johnson, 86 ; 15 Johnson, 212 ; 18 Johnson, 489 ; 2 Caines, 125 ; 4 Johnson, 425 and note; 5 Wendell, 126 ; 3 Schammon, 483 ; Graham on New Trials, 192.

A. W. HAMMOND & SON, COLLIER & HOYT, for defendants in error.

BROWN, C. J.

1. We think the Court below erred in granting a new trial in this case, as the defendants in the Court below bring themselves within no rule of vigilance which will justify such action of the Court in their favor. In the preparation of the case for trial, no effort seems to have been made to rebut the allegations of the plaintiff as to the value of the goods. Indeed, the case was risked upon the point that the defendants had delivered the goods to an agent of the plaintiff, and was not therefore liable. Upon the trial, the plaintiff appeared in Court, and swore that the person who assumed to control the goods was not his agent, and the jury no doubt believed him, as is readily inferred from their verdict. If defendants were surprised by this, they had a perfect legal remedy. They had weeks within which to enter an appeal, as there was an adjourned term of the Court, and they were in time, if it was entered within four days after the final adjournment of the Court. No appeal was entered, and no attempt was made to appeal, till the fifth day after the end of the term. This was gross negligence on the part of the defendants.

The judgment was rendered at the October term, 1867. No further effort was made by the defendants to set it aside or to obtain a new trial, till after an execution had issued. It then appears, from a transcript of the record, that a bill was filed praying an injunction and a new trial, which the Chancellor refused to sanction, on the 1st June, 1868. The bill was then abandoned, and the matter rested until 23d

October, 1868, more than a year from the date of the verdict, when the present motion was made.

The only plausible ground in this motion is the newly discovered evidence of Burr and Woddail, as to the value of the goods, their condition, etc. But the same difficulty arises here that runs through the whole proceeding, so far as the defendants are concerned. There has been no diligence.

Burr was the clerk of the defendants at the time the goods were stored with them; and it was their duty, when preparing for trial, to have made diligent inquiry of him as to his knowledge of these facts. They failed to do this, and the present application is made, partly on the ground that they have discovered that he knew important facts about the goods, a year after the trial.

Woddail was sworn and examined as a witness, on the trial, and though the goods had been stored with him and his partner, after they were found at the railroad depot, not a question is asked him by the defendants on the trial as to their condition, value, and the like. Why did they not then inquire what he knew on these points?

2. The 6th section of the 11th article of the new Constitution of this State is invoked in aid of the application. It provides that "no motion for a new trial, bill of review, or other proceeding to vacate any judgment, order or decree, made since the 19th of January, 1861, by any of said Courts for *fraud, illegality* or *error of law,* shall be denied by reason of the same not having been moved in time. *Provided,* said motion or application is made in twelve months from the adoption of this Constitution."

It was certainly not intended to grant new trials in all cases tried since 19th January, 1861, especially when the party was cast in the suit, and lost his rights by his own negligence. In this case, there is no proof that either fraud, illegality, or error of law exists.

It is complained that the verdict was too large. We think this may be true. But as the defendants took no legal steps to set it aside, and acquiesced in it till after the time allowed

them by law to move in the matter, we have no power to afford them relief, without the violation of well established rules of law.

Judgment reversed.